UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
RALPH P. CAPONE,

                   Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                           04-CV-2947(JS)(MLO)

       -against-

PATCHOGUE-MEDFORD UNION FREE SCHOOL
DISTRICT, PATCHOGUE-MEDFORD UNION FREE
SCHOOL DISTRICT BOARD OF EDUCATION,
TINA WEEKS, in her individual and
official capacity, ANTHONY KAISER,
in his individual and official
capacity, BRIAN BRADY, in his individual
and official capacity, MARGARET E.
FELOUSIS, in her individual and official
capacity, PATRICK NETT, in his individual
and official capacity, RONALD RABY, in
his individual and official capacity,
JOSEPH LOSCIAVO, in his individual and
official capacity, VERONICA A. MCDERMOTT,
PHD., SUPERINTENDANT OF SCHOOLS, in her
individual and official capacity,
BARBARA KANE, DISTRICT CLERK and
COMPLIANCE OFFICER, in her individual and
official capacity, ALLEN ROBINSON,
DIRECTOR OF ADULT EDUCATION, in his
individual and official capacity, JENMAUR,
INC., CHRISTOPHER CLAYTON, ESQ., in his
individual and official capacity;
INGERMAN SMITH, LLP, and JANE DOE AND
JOHN DOE, fictitiously named persons,
Nassau County Division, New York State
Civil Service Commission,

                   Defendants.
---------------------------------------X
Appearances:

For Plaintiff:          Ruth M. Pollack, Esq.
                       Pollack & Kotler Law Office
                       250 Old Country Road, Suite 505
                       Mineola, NY 11501

For Defendants:
Patchogue-Medford      Rondiene Erin Novitz, Esq.
Union Free School      Cruser & Mitchell, LLP
District, McDermott,    225 Old Country Road, South Wing

| | |
|---|---|
| Kane, Loshiavo, and Felousiz | Melville, NY 11747 |
| Kaiser, Nett, Raby and Brady | David Norman Yaffe, Esq.<br>Hamburger, Maxson, Yaffe,<br>Wishod & Knauer, LLP<br>225 Broadhollow Road, Suite 301E<br>Melville, NY 11747 |
| Weeks | Howard Marc Miller, Esq.<br>Bond, Schoeneck & King<br>1399 Franklin Avenue, Suite 200<br>Garden City, NY 11530 |
| Jenmaur, and Robinson | Brian T. Egan, Esq.<br>Pelletreau & Pelletreau, LLP<br>475 East Main Street, Suite 114<br>Patchogue, NY 11772 |
| Ingerman Smith and Clayton | Ralph A. Catalano, Esq.<br>Catalano, Gallardo & Petropoulos, LLP<br>1565 Franklin Avenue<br>Mineola, NY 11501 |

SEYBERT, District Judge:

<u>INTRODUCTION</u>

On July 14, 2004, Plaintiff Ralph P. Capone ("Plaintiff") commenced this action alleging that Defendants, <u>inter alia</u>, violated his civil rights. There are five motions presently pending before this Court: (1) Defendants Christopher Clayton ("Clayton") and Ingerman Smith, LLP's ("Ingerman") (collectively, the "Ingerman Defendants") motion for judgment on the pleadings pursuant to Rule 12(c), dismissing the Second Amended Complaint; (2) Defendants Allen Robinson ("Robinson") and Jenmaur, Inc.'s ("Jenmaur") (collectively, the "Jenmaur Defendants") motion for judgment on the pleadings; (3) Defendants Patchogue-Medford Union

Free School District, Patchogue-Medford Union Free School District Board of Education (the "Board") (collectively, the "School District"), Veronica McDermott ("McDermott"), Barbara Kane ("Kane"), Joseph Losciavo ("Losciavo"), and Margaret Felousiz's ("Felousiz")[1] motion for judgment on the pleadings; (4) Tina Weeks' ("Weeks") motion to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6); and (5) Defendants Anthony Kaiser ("Kaiser"), Brian Brady ("Brady"), Patrick Nett ("Nett"), and Ronald Raby ("Raby") (collectively, the "Board Member Defendants") motion to dismiss. For the reasons explained below, the Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from the Second Amended Complaint and the Original Complaint. Plaintiff is a resident of Suffolk County. (2d Am. Compl. ¶ 5.) For approximately eighteen years, he worked as a custodian for the Patchogue-Medford Union Free School District. (Id. ¶¶ 7-9.) On June 19, 2003, he was placed on administrative leave because of allegations that he engaged in sexual misconduct. (Id. ¶¶ 44, 47, 99, 120(c).) The allegations were made by Jose Fuentes and Eugenio Cabrera, two students enrolled in the School District's ESL[2] Program. (Id. ¶¶

---

[1]    The Caption contains an erroneous spelling of Ms. Felousiz's name. The Court uses the accurate spelling.

[2]    ESL stands for "English as a Second Language"

3

44, 47, 99, 120(c).) The Board retained William T. Ferris, Esq. (the "Hearing Examiner"), to preside over a New York Civil Service Law § 75 hearing ("§ 75 Hearing") concerning the charges against Plaintiff. (<u>Id.</u> ¶ 63.) The Hearing Examiner found the allegations against Plaintiff to be credible. (<u>See</u> <u>id.</u> ¶ 67.) His report was announced at a March 22, 2004 meeting of the Board. In a 4-3 vote, the Board voted to terminate Plaintiff. (<u>Id.</u> ¶ 73.) Plaintiff was terminated on March 23, 2004. (<u>Id.</u> ¶ 70.)

Plaintiff insists that the charges against him were false and his termination contrived. He asserts that certain members of the Board, for various reasons, wished to have him terminated. For example, Plaintiff claims that Weeks sought Plaintiff's termination because it would help her become Vice President of the Board. (<u>Id.</u> ¶ 66.) The allegation stands in stark contrast with the allegations proffered in the Original Complaint. Plaintiff initially alleged that Weeks "refused to succumb" to the "pressure and tricks" of other Defendants who sought to have him terminated, and that Weeks voted that Plaintiff should retain his job. (Compl. ¶¶ 75, 76.) Another of Plaintiff's theories is that, during the Board meeting, certain Defendants improperly branded him as a homosexual in order to secure his termination. Specifically, Plaintiff alleges that Clayton and Kaiser "attempted to influence other members of the board in their vote to accept or reject the Hearing Examiner's findings . . . by characterizing Capone as a

homosexual." (2d Am. Compl. ¶ 75.)

Plaintiff also claims that Defendants orchestrated his termination in an effort to silence and discredit him. Further to this assertion, Plaintiff maintains that Defendants are misappropriating state and federal education funding. For example, Plaintiff alleges that Defendants request state funding for classes despite the fact that they are not paying teachers, and that "Robinson has knowingly received monies from the School District . . . into his dummy corporation, known as Jenmaur, Inc. contrary to Executive Board minutes of the School Board." (Id. ¶¶ 102, 103.) Plaintiff alleges that the Defendants (particularly Robinson) retaliated against him for questioning pay arrangements with respect to work he did for Jenmaur.

Plaintiff alleges a litany of claims. The eight causes of action are listed in the Second Amended Complaint as follows: (1) wrongful termination "as a result of his being perceived . . . as a homosexual man . . . in violation of his right to Equal Protection as guaranteed by the Fourteenth Amendment;" (2) conspiracy to violate civil rights in violation of 42 U.S.C. § 1985 (against Defendants Weeks, Robinson, Clayton, Ingerman, Kane, McDermott, Fuentes and Cabrera); (3) selective enforcement of School District policy in violation of his Equal Protection rights; (4) retaliation in violation of his First Amendment rights; (5) breach of contract; (6) libel and slander; (7) violation of the

Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"); and (8) "failure to train."

## PROCEDURAL ISSUES

As the Parties to this action are well aware, the Defendants' respective motions to dismiss have been deemed submitted unopposed. <u>See</u> May 18, 2006 Order; April 25, 2006 Order. Plaintiff's failure to oppose the motions (despite the fact that he was effectively granted seven months to file an opposition), however, does not require that they be granted. <u>See</u> <u>Maggette v. Dalsheim</u>, 709 F.2d 800, 802 (2d Cir. 1983) ("Where, as here, the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute a 'default' justifying dismissal of the complaint."); <u>Rawlins v. M&T Mortgage Corps.</u>, No. 05-CV-2572, 2005 WL 2143334 at *1 (Sept. 1, 2005 S.D.N.Y.) ("A plaintiff's failure to oppose a motion to dismiss does not, by itself, justify dismissal.")

## STANDARD OF REVIEW

Certain of the Defendants have moved for judgment on the pleadings pursuant to Rule 12(c), while other Defendants have moved to dismiss the Second Amended Complaint pursuant to 12(b)(6). The applicable legal standards are indistinguishable. <u>See</u> <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 n.1 (2d Cir. 2003) (citing <u>Miller v. Wolpoff & Abramson, LLP</u>, 321 F.3d 292, 300 (2d Cir. 2003).

A district court should grant a motion to dismiss under Rule 12b(6) or Rule 12(c) only if "'it is clear that no relief

could be granted under any set of facts that could be proved consistent with the allegations.'" H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). Generally, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true. H.J. Inc., 492 U.S. at 249. See also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (citing the Federal Rules' liberal system of notice pleading).

The Court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000); see also Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The appropriate inquiry, therefore, is not whether a plaintiff's claims are ultimately meritorious, but whether the plaintiff is entitled to offer evidence to support them. See Ricciutti v. New York City Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991) (plaintiff is not compelled to prove his or her case at the pleading stage).

A claimant need only give a statement of his or her claim that will give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Id. Therefore, where a complaint is filed that charges each element necessary to recover, the dismissal of the case for failure to set out evidential facts

can seldom be warranted. See U.S. v. Employment Plasterers' Ass'n., 347 U.S. 186, 189, 74 S. Ct. 452, 98 L. Ed. 618 (1954). Allegations that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, however, are meaningless as a practical matter and, as a matter of law, are insufficient to state a claim. See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

DISCUSSION

The contours of Plaintiff's claims are difficult to decipher. The theories of liability are unclear and, in many cases, Plaintiff fails to identify the particular Defendants who are subject to his claims. It is also noteworthy that Plaintiff has completely changed the overarching theory of his case. Initially, Plaintiff's claims were grounded upon the procedural inadequacy of his termination. Here, Plaintiff introduces the new theory that he was denied equal protection because he was perceived to be a homosexual.

Putting aside the Second Amended Complaint's failure in many instances to comply with the notice pleading requirements of Rule 8, see Fed. R. Civ. P. 8, there are several other defects that warrant dismissal of Plaintiff's claims. The Court addresses Plaintiff's claims in turn.

I. Equal Protection

Liberally construed, Plaintiff alleges that Defendants violated his right to equal protection in two ways. First, he

asserts that he was terminated as a result of Defendants'
perception that he was a homosexual. Second, Plaintiff avers that
"defendants . . . falsely accus[ed] [him] of misconduct and
terminat[ed] him, while at the same time . . . only privately
admonished a male coach . . . who was accused of allegedly engaging
in sexual activities with female students." (Id. ¶ 94.)

With respect to both claims, Plaintiff has failed to
sufficiently allege any individual Defendant's specific involvement
in any constitutional violation. See Al Jundi v. Rockefeller, 885
F.2d 1060, 1065 (2d Cir. 1989); Davis v. County of Nassau, 355 F.
Supp. 2d 676-677 (E.D.N.Y. 2005). The Second Amended Complaint
plainly alleges that the Board's vote to terminate Plaintiff was 4-
3. Plaintiff does not specify which Board Members voted to
terminate him, or otherwise allege that any individual Defendant
acted with a discriminatory motive. Nor does Plaintiff allege
which, if any, School District officials were involved in the
alleged biased treatment that was given to a school coach,
ostensibly because he was accused of harassing a member of the
opposite gender. Such conclusory allegations of selective
enforcement, particularly with respect to the individually named
Defendants, is not sufficient to withstand a motion to dismiss.
See D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist., 386 F. Supp.
2d 119, 128 (E.D.N.Y. 2006).

Moreover, the Court agrees with the holding in Verbeek v.

Teller, 158 F. Supp. 2d 267 (E.D.N.Y. 2001) and finds that Defendants Clayton, Losciavo, Felousiz, Weeks, Kaiser, Brady, Nett, and Raby are entitled to absolute immunity for their respective roles in prosecuting, and participating in the decision to terminate Plaintiff. See id. Plaintiff's Equal Protection claims against these individual Defendants should be dismissed for this additional reason.[3]

Plaintiff's claims against Ingerman and Jenmaur must also be dismissed. The Complaint does not provide any meaningful allegation that either of these entities were involved with, or should be held liable for any equal protection violation.

Finally, the Court must address Plaintiff's claims against the School District. A plaintiff's claim that they were "discriminated against based on [their] sexual orientation is actionable under the Equal Protection clause." Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 323 (E.D.N.Y. 2002) (denying defendant's motion to dismiss plaintiff's equal protection claim that the school district handled complaints of sexual harassment against non-homosexual teachers differently). "To

---

[3]    Robinson requests that he also be granted absolute immunity with respect to Plaintiff's Equal Protection claims. However, the Court finds that the Second Amended Complaint does not even arguably allege any such claim against him. The Court does not reach the issue of Kane's or McDermott's entitlement to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (stating that the threshold question, before passing on qualified immunity, is whether plaintiff has alleged any constitutional violation).

prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (emphasis added); see also Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). The School District may be held liable under § 1983 for the official decisions made by the Board. See ,e.g., New Creation Fellowship of Buffalo v. Town of Cheektowaga, No. 99-CV-460A, 2004 WL 1498190, at *65 (W.D.N.Y. July 2, 2004) ("actions by a town board are considered manifestations of final municipal policymaking"); see also Coogan v. Smyers, 134 F.3d 479, 485 (2d Cir. 1998) (recognizing that liability of defendants as a decision-making group hinged upon the plaintiff's ability to prove that a majority of the board reached a decision based upon impermissible criteria).

Plaintiff claims that he was not terminated because the Board found him guilty of the charges against him, but rather because certain of the Board members perceived him to be a homosexual. He cites the following conversation between Weeks, Clayton (who was not a Board member) and Kaiser as evidence that he was terminated based upon an impermissible consideration:

| | |
|---|---|
| Weeks: | "Why wouldn't someone acquiesce and admit to doing [Capone's alleged acts]? |
| Clayton: | "My uncle Mike who is fifty three years old, left his wife to move in with his boyfriend . . ." |
| Kaiser: | "Let's face it, the guy is gay. . . Are we supposed to base our decision on only the transcripts and the hearing officer's findings, and not on anything else we've seen or heard?" |

(2d Am. Compl. ¶ 73.)  On its face, the conversation does not <u>per se</u> raise an inference that the Board made their decision based upon some impermissible criteria.  The fact that certain Board Members' might have considered Plaintiff's sexual orientation in determining the credibility of the allegations against him was not necessarily impermissible.  <u>Cf.</u> <u>Moran v. Fashion Inst. of Tech.</u>, No. 00-CV-1275, 2002 WL 31288272, at *5 (Oct. 7, 2002 S.D.N.Y.) (recognizing that a Title VII plaintiff alleging same sex harassment has an additional pleading burden that can be satisfied by, <u>inter alia</u>, establishing that "the harasser was homosexual and the harassment is motivated by sexual desire").  However, pleadings are to be liberally construed.  Assuming all facts in a light most favorable to Plaintiff, he has, albeit barely, alleged an Equal Protection claim against the School District based upon the alleged discriminatory motive behind the decision to terminate him.

However, Plaintiff's disparate treatment claim based upon the School District's discipline of the unidentified coach are insufficient.  The Second Amended Complaint's allegations are, quite simply, too vague to survive a motion to dismiss.  <u>See</u> <u>DePace</u>

v. Flaherty, 183 F. Supp. 2d 633, 640 (S.D.N.Y. 2002).
Importantly, it is unclear when the coach was disciplined, what
sort of conduct the coach was charged with, or whether the same
policies were in effect at the time the discipline was meted out.
As the School District points out, the coach is also identified by
Plaintiff to be a special education teacher.  Teachers are subject
to Article 61 of New York's Education Law, see, e.g., N.Y. Educ. L.
§ 3020 (entitled "Discipline of teachers"), and are part of an
entirely different union, with a separate collective bargaining
agreement.  Such differences weigh against the notion that the two
individuals were similarly situated with respect to appropriate
disciplinary procedures.

II.  Section 1985 Conspiracy

A plaintiff alleging a conspiracy claim pursuant to
§ 1985 must plead: "(1) a conspiracy (2) for the purpose of
depriving a person or class of persons of the equal protection of
the laws, or the equal privileges and immunities under the laws;
(3) an overt act in furtherance of the conspiracy; and (4) an
injury to the plaintiff's person or property, or a deprivation of
a right or privilege of a citizen of the United States." Thomas v.
Roach, 165 F.3d 137, 146 (2d Cir 1999); see also United Bhd. of
Carpenters v. Scott, 463 U.S. 825, 829-30, 103 S. Ct. 3352, 77 L.
Ed. 2d 1049 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102-03,
91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971).  Additionally, a plaintiff

must plead "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Thomas, 165 F.3d at 146 (citing Griffin, 403 U.S. at 102). "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002); see also Thomas, 165 F.3d at 147 (stating that in order to prove a conspiracy action under § 1985, a plaintiff must allege, with a modicum of particularity, overt acts the defendant partook in which were "reasonably related to the promotion of the claimed conspiracy").

    As explained above, the Second Amended Complaint fails to sufficiently allege any individual Defendant's role in any alleged constitutional deprivation. Furthermore, Plaintiff only proffers conclusory allegations in support of his § 1985 claim. Finally, Plaintiff's § 1985 claims must be dismissed because "sexual orientation discrimination will not support a 42 U.S.C. § 1985(3) claim." Moran v. Fashion Inst. of Tech., No. 01-CV-6186 2002 WL 31175251 at * 10 (S.D.N.Y. Sept. 30, 2002) (internal quotations omitted); see also Trigg v. New York City Transit Auth., No. 99-CV-4730, No. 2001 WL 868336, at *12 (E.D.N.Y. July 26, 2001).

Accordingly, the claim must be dismissed.

III. <u>Retaliation</u>

To state a First Amendment retaliation claim, a plaintiff must allege that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment action, and (3) that a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." <u>Gorman-Bakos v. Cornell Coop. Extension</u>, 252 F.3d 545, 553 (2d Cir. 2001); <u>see</u> <u>also</u> <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999).

The allegations supporting Plaintiff's retaliation claim are difficult to comprehend. Plaintiff appears to allege that Robinson orchestrated his termination because he feared that Plaintiff would make known an ongoing fraud perpetrated by Robinson and other "Defendants." As to all Defendants except Robinson, the claims are deficient for, <u>inter</u> <u>alia</u>, lack of specificity, and the failure to allege that protected speech was a motivating factor in any action taken against him.[4] The claim against Robinson is

_____

[4]     The Second Amended Complaint alleges that Plaintiff "question[ed] . . . Robinson about the propriety of his being paid by the District for work he performed at Robinson's request." (2d Am. Compl. ¶ 101.) Plaintiff alleges that he "relied upon Robinson's misrepresentations . . . that the work was a part of his duties for the District's classes . . . and that the payments were proper." (<u>Id.</u> ¶ 109.) While a far-reaching fraud of state and federal funds is obviously a matter of public concerns, there is no allegation that Plaintiff engaged in, or threatened to engage in speech with respect to this topic. In fact, the Second Amended Complaint alleges that Plaintiff

deficient, because, <u>inter</u> <u>alia</u>, Plaintiff fails to allege that Robinson was involved in the final decision to terminate Plaintiff. <u>See</u> <u>Al Jundi</u>, 885 F.2d at 1065.

IV.  <u>FERPA</u>

Plaintiff alleges that Defendants obtained his personal records without his consent in violation of FERPA. (2d Am. Compl. ¶¶ 123-24.) The claim must be dismissed because there is no private right of action under FERPA. <u>See</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 287, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) ("there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights"); <u>see also</u> <u>Rabin v. Wilson-Coker</u>, 362 F.3d 190, 201 (2d Cir. 2004) (recognizing <u>Gonzaga</u>'s holding that "[FERPA] did not create individual rights").

V.  <u>Breach Of Contract</u>

Plaintiff alleges that he is a member in good standing of the Civil Service Employees Association ("CSEA") Union, Local 1000. (2d Am. Compl. ¶ 114.) He claims that he was terminated in violation of the collective bargaining agreement ("CBA") between the School District and the Union. (<u>Id.</u> ¶¶ 115-17.) The alleged breaching conduct was Defendants denial of his equal protection

_____

accepted Robinson's explanation. The only alleged speech concerned Plaintiff's pay arrangements; the speech is personal to plaintiff and, thus, is not actionable. <u>See</u> <u>Ezekwo v. New York City Health & Hosp. Corp.</u>, 940 F.2d 775, 781 (2d Cir. 1991) (rejecting First Amendment retaliation claim because plaintiff's speech concerned a matter that was personal in nature).

rights.

The claim must be dismissed in its entirety. Under New York law, it is well settled that:

> when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract." Unless the contract provides otherwise, only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer.

Bd. of Educ., Commack Union Free School Dist. v. Ambach, 70 N.Y.2d 501, 508, 522 N.Y.S.2d 831, 517 N.E.2d 509 (1987). An employee may only be relieved of this requirement where "the union fails in its duty of fair representation." Id.

It is also well settled that "a successful article 78 proceeding for reinstatement is a prerequisite to a claim for damages by a discharged public employee. . . . Even non-tenured or probationary employees must invoke article 78 to review dismissals that are allegedly arbitrary, capricious, or prohibited by statute or the constitution." Finley v. Giacobbe, 79 F.3d 1285, 1292 (2d Cir. 1996).

Here, Plaintiff seeks money damages, but there is no indication that his Article 78 proceeding has been completed. Indeed, Plaintiff has recently submitted a letter indicating that his Article 78 challenge is still ongoing. (See Docket Entry No. 213.) Accordingly, his breach of contract claims must be

dismissed.[5]

VI. <u>Libel & Slander</u>

Plaintiff alleges the following actions by Defendants constituted libel or slander: (1) Kane stated to a Union representative, "Nobody will ever know what really happened but Ralph and those two ESL students"; (2) Raby, Kaiser, Brady and Nesby publicly announced a decision to terminate Plaintiff before he was aware of it; (3) Kaiser published an "Op-Ed" in the "Long Island Advance" where he referred to the fact that Plaintiff was alleged to have solicited "sex from students;" (4) Kane and Robinson contacted a Megan's Law advocate about the findings from the § 75 Hearing.

"To state a claim for defamation under New York law, the plaintiff must allege facts sufficient to support a finding of a published statement concerning the plaintiff that is both false and defamatory." <u>Hammer v. Trendl</u>, No. 02-CV-2462, 2003 WL 21466686 at *3 (E.D.N.Y. Jan. 18, 2003) (internal quotations omitted); <u>see also Meloff v. New York Life Ins. Co.</u>, 240 F.3d 138, 145 (2d Cir. 2001) ("New York requires a libel plaintiff to prove five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2)

---

[5]  The breach of contract claims are also unavailing against several of the individual Defendants who plainly are not parties to the CBA.  <u>See</u> <u>Suffolk County v. Long Island Lighting Co.</u>, 728 F.2d 52 (2d Cir. 1984) ("Clearly, though, appellant cannot succeed with these claims, for absent a contractual relationship there can be no contractual remedy.")

published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff").

It is well established that "[a] statement of pure opinion is not actionable" in a defamation action. <u>Belly Basics, Inc. v. Mothers Work, Inc.</u>, 95 F. Supp. 2d 144, 145 (S.D.N.Y. 2000). In discerning whether a statement is fact or opinion, a court assesses: "whether the challenged statements have a precise and readily understood meaning; whether the statements are susceptible of being proven false; and whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact." <u>Id.</u>

Plaintiff's defamation claims are deficient for a litany of reasons. The Court need only point out a few.[6]

First, Kane's comment is not even defamatory; if anything, it supports Plaintiff's assertion that he was wrongfully accused. Moreover, the comment cannot be fairly construed as anything but opinion. Plaintiff's claims against Raby, Kaiser, Brady and Nesby are similarly deficient. First, Plaintiff failed to plead with specificity the precise defamatory statement that

_____

[6]    The Court does not address the purported defamatory and libelous statements contained in ¶ 120(d) and ¶ 120(e). Plaintiff does not identify any specific speaker or statement. The allegations contained in these paragraphs are plainly insufficient to support a claim for libel or slander.

these Defendants allegedly made. See N.Y. C.P.L.R. § 3016(a) ("[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."); Rizzo v. Edison, Inc., 419 F. Supp. 2d 338, 350 (W.D.N.Y. 2005), aff'd 172 Fed. Appx. 391 (2d Cir. 2006) ("plaintiff has failed to state a claim for libel because she has failed to identify in the complaint the actual words that are the basis of the alleged libel"). Furthermore, the statements were true; Plaintiff was, in fact, terminated from his position. See id. at 350-51. Plaintiff's claims concerning Kaiser's Op-Ed letter are deficient for the same reason. By Plaintiff's own admission, he was charged with engaging in sexual misconduct with students.

Finally, Plaintiff's claims against Kane and Robinson must be dismissed for failure to identify any defamatory statement. Moreover, the claims must be dismissed pursuant to New York Civil Rights Law § 74. Section 74 provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

N.Y. Civ. Rights Law § 74. The Second Amended Complaint charges that Kane and Robinson simply relayed the findings from the § 75 Hearing to a Megan's Law advocate. Section 74 protects such activity. See Daniel Goldreyer, Ltd. v. Van de Wetering, 217

20

A.D.2d 434, 435-36, 630 N.Y.S.2d 18 (1st Dep't 1995); see also Gonzalez v. Gray, 69 F. Supp. 2d 561, 568-70 (S.D.N.Y. 1999).

Accordingly, Plaintiff's defamation claims are hereby dismissed.

## VII. Failure To Train

Plaintiff alleges that "Defendants . . . violated [his] Equal Protection Rights by its [sic] failure to train defendant Kane in the proper performance of her duties to properly investigate any purported complaints against Capone." (2d Am. Compl. ¶ 127.) It is unclear who Plaintiff purports to bring this claim against. It appears to be a Monell claim.

Importantly, there is no allegation concerning how any alleged failure to train caused the violation of Plaintiff's Fourteenth Amendment Rights. See Smith v. City of New York, 388 F. Supp. 2d 179, 188 (S.D.N.Y. 2005) (finding that plaintiff's "failure to come forward with facts demonstrating a nexus between any purported inadequacies and the alleged constitutional violations" was fatal to their 1983 claim). Plaintiff's conclusory allegations are insufficient to withstand a motion to dismiss. See Barr, 810 F.2d at 363. Accordingly, Plaintiff's "failure to train" claim is hereby DISMISSED.

## CONCLUSION

For the reasons explained above, the Defendants' motions are GRANTED in part and DENIED in part. Plaintiff's only remaining

claim is against the School District. Based upon Plaintiff's multiple failed attempts to sufficiently plead cognizable claims, failure to respond to Defendants' motions, and track record of delay, which has resulted in prejudice to all Defendants, the Court denies Plaintiff leave to amend. <u>See</u> Fed. R. Civ. P. 15. The Court denies Weeks' and the Ingerman Defendants' respective requests for sanctions and attorneys fees pursuant to Rule 11, 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

SO ORDERED

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated: September 15, 2006
       Central Islip, New York